**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| **SANDRA TOUCHET** | * | **CIVIL ACTION NO. 06-0588** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Sandra Touchet, born November 17, 1956, filed an application for supplemental security income payments on February 18, 1998, alleging disability since November 17, 1961, due to back pain, obesity, gout, arthritis, and mental problems. On January 21, 1999, claimant was determined to be disabled and entitled to benefits under Listing 9.09A[1] due to obesity with degenerative changes in the lumbosacral spine. (Tr. 28-31).

On November 19, 2004, claimant was notified that after continuing disability review, she was determined to no longer meet the listing because of medical

---

[1]This listing has since been deleted from the Social Security regulations. To meet this regulation, claimant had to weigh 274 pounds or more at her height of 65 3/4 inches tall, and have a history of pain and limitations in the lumbosacral spine based on physical examination and diagnostic findings of arthritis. (Tr. 29). At the time of the favorable decision, she weighed 306 pounds and had a back impairment confirmed by MRI findings of moderate degenerative changes in the spine with a disk herniation at L4-5. (Tr. 30, 221-25, 227).

improvement. (Tr. 32, 56-58). Her benefits were ceased on November 1, 2004, and eligibility for benefits terminated as of January 31, 2005.

After reconsideration was denied, claimant requested a hearing before an Administrative Law Judge ("ALJ"). By decision dated December 1, 2005, the ALJ affirmed the cessation of benefits. (Tr. 15-22). Claimant seeks judicial review of this ruling.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:[2]

**(1) Consultative Examination by Dr. Michelle Guidry dated October 23, 2004**. Claimant complained of lower back pain radiating to her neck and left thigh with occasional lower extremity weakness. (Tr. 431). She also had a history of

---

[2]While all of the medical records were reviewed by the undersigned, only those relating to the cessation of benefits are summarized herein.

stress-induced asthma attacks and occasional headaches. She said that she had not had a severe asthma attack in several years.

Claimant stated that she was able to feed herself, but could only dress herself sometimes. (Tr. 432). She reported that she could stand 5 to 10 minutes at a time, and 10 to 20 minutes a day; walk on ground level about 25 to 50 yards, and sit about 15 minutes. She said that she had trouble with household chores, including mopping, sweeping, vacuuming, and cooking. Her medications included Xenical, Fortabs, Lasix, Prevacid, Naproxen, Alprazolam, Propoxyphene, Tylenol, and Valtrex.

On examination, claimant was obese at 5 feet 6 inches tall and 253 pounds. Her blood pressure was 130/80. She walked slowly, but otherwise had a normal gait and no difficulty with ambulation. She used her hands to get on and off the table and chair. Dr. Guidry did not witness any difficulties with dressing and undressing.

On spine/extremities examination, claimant had 2+ pulses. She had no clubbing, cyanosis, or edema. Her gait was normal, yet slow. Grip strength was 5/5 bilaterally. Her lumbar spine flexion was limited secondary to pain. Straight leg raising was positive. She was able to walk on her heels, toes, and heel-toe without difficulty. She was unable to squat due to pain, but there was questionable effort.

Neurologically, claimant appeared to mentate slowly. However, she was alert and oriented times 4, and Dr. Guidry did not think that she was mentally retarded. She had 5/5 muscle strength, no sensory deficits, normal nerve exams, and 2+ deep tendon reflexes.

Dr. Guidry's impression was lower back pain with a positive straight leg test and lumbar spine flexion limited by pain. (Tr. 434). However, claimant did mention lower back and left leg pain on straight leg raising, which was consistent with disc disease or nerve impingement. Otherwise, Dr. Guidry found no other objective evidence, other than that claimant ambulated slowly but was able to do so normally. Dr. Guidry also observed that claimant was obese, which was another problem that could make her life difficult, as she had trouble getting around and walked slowly. In general, however, Dr. Guidry opined that claimant was able to sit, stand, walk, lift, hear, speak, and handle objects without difficulty.

**(2) Records from University Medical Center ("UMC") dated November 17-23, 2004**. Claimant was admitted with stomach and back pain. (Tr. 436). A CT of the abdomen showed left hydronephrosis with an obstructing calculus in the course of the proximal left ureter. (Tr. 453). Lumbar spine x-rays revealed degenerative disc disease in the lower lumbar spine with associated spondylosis. (Tr. 456). The diagnosis was pyelonephritis, unspecified. (Tr. 435).

**(3) Records from Dr. David Tate dated April 29, 2002 to December 7, 2004.** Claimant was seen for back pain and headaches. (Tr. 477-80). Her weight was 276 pounds in 2002. (Tr. 480). Dr. Tate prescribed Xenical, Darvocet, Bextra, Ultram, Lasix, Naproxen, Prevacid, Alprazolam, and Xanax. (Tr. 477-80). At her last visit on December 7, 2004, claimant weighed 250 pounds. (Tr. 477).

**(4) Consultation and CT Reports from Tulane University Hospital dated December 13-20, 2004.** Claimant was referred by Dr. Tate for evaluation of kidney stones. (Tr. 485). Her medications included Tramadol, Acyclovir, iron, intermittent Darvocet for back pain, and Lasix. On back examination, she had left-sided CVA discomfort to deep palpation, no right CVA tenderness, and no palpable spinal abnormalities. (Tr. 486). Extremities evaluation revealed no clubbing, cyanosis, or edema. Neurologically, her motor and sensory were grossly intact.

A CT scan of the pelvis showed three non-obstructing stones measuring up to 4 mm in maximum diameter along the course of the right ureter, a single non-obstructing stone within the proximal left ureter, and no evidence of nephrolithiasis. (Tr. 481-82).

**(5) Residual Functional Capacity ("RFC") Assessment (Physical) dated November 8, 2004 and December 30, 2004.** The evaluator determined that claimant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 488). She could

stand, walk, and sit about 6 hours in an 8-hour workday. She had unlimited push/pull ability. She could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and frequently balance. (Tr. 489). The medical consultant, Dr. Nancy Armstrong, agreed with the evaluation. (Tr. 495).

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on September 7, 2005, claimant was 48 years old. (Tr. 508). She testified that she was 5 feet 6 inches tall, and weighed 249 pounds. (Tr. 509). She stated that she weighed 277 pounds at the time that she was found to be disabled. (Tr. 514). She had attended school through the sixth grade, and could read some.

Claimant testified that she had a driver's license, but had not driven lately. She reported that she could not work due to pain in her back. (Tr. 510). She stated that she needed help with housework, walking around, and taking showers. She said that she had tried to grocery shop, but could not stand for long periods.

As to restrictions, claimant testified that she could lift a gallon of milk sometimes. (Tr. 511). She stated that it hurt when she climbed stairs. She said that she could not walk very far without pain.

Regarding complaints, claimant reported that she had really bad arthritis, low back pain, and left leg problems. (Tr. 511-12). She stated that standing, sitting, or lying down made her pain worse. (Tr. 512). She testified that she had to lie down

6

and rest for an hour four or five times a day. (Tr. 516).

As to activities, claimant testified that she watched television and tried to walk around as much as she could. (Tr. 516). She stated that she could fold a half a basket of clothes. She reported that she attended church when she could. (Tr. 517).

Claimant testified that she was taking pain medications, which helped sometimes. She said that she had no side effects from the medicines. (Tr. 512, 518). Additionally, claimant complained that she had bad nerves, for which she was taking a nerve pill. (Tr. 513). She reported that noise and crowds bothered her. (Tr. 517).

**(7) Administrative Hearing Testimony of Shirley Dickie, Vocational Expert ("VE")**. The ALJ posed a hypothetical in which he asked Ms. Dickie to assume a claimant of the same age and education; who had the ability to do some reading and math; could lift and carry 20 pounds; could sit, stand, and walk for six hours; was obese, and was limited to short, simple instructions. (Tr. 519). In response, the VE testified that such claimant would be able to work as a hand packer and packager, of which there were 6,554 jobs in Louisiana and 622,759 nationally; laborer, except construction, of which there were 31,000 jobs statewide and 1,400,358 nationally, 50 percent of which would be open, and miscellaneous food preparer, of which there were 13,897 positions statewide and 715,682 nationally, 50 percent of which would be open. (Tr. 519-20). When the ALJ modified the hypothetical to assume that all

7

of claimant's testimony was true, Ms. Dickie testified that claimant would not be able to maintain employment. (Tr. 520).

**(8) The ALJ's Findings are Entitled to Deference**. Claimant argues that: (1) the ALJ failed to present a proper hypothetical to the vocational expert, (2) the ALJ should have sent claimant for a consultative psychological examination.

At the outset, claimant asserts that the ALJ should have sent her for a consultative psychological examination. (rec. doc. 8, p. 4). Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The decision to require such an examination is discretionary. *Id.* In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. § 416.1444." *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989), quoting *Jones*, 829 F.2d at 526.

In this case, the ALJ noted that claimant had sought treatment for her depression and nerves, which were medically determinable impairments under §§

12.04 and 12.06 of the listing of impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06 (Tr. 17). However, she noted that claimant did not meet Part B of these listings, which requires at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

§§ 12.04, 12.06 (B).

The ALJ found that claimant had only mild restrictions in the first two areas, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 17-18). For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id*. As claimant has not demonstrated that she met all of the criteria under §§ 12.04 or 12.06, the ALJ's finding that claimant's impairments did not meet these listings is entitled to deference.

Additionally, the ALJ found that claimant suffered from depression and nerves, which were severe impairments. (Tr. 18). However, she noted that claimant was not seeking mental health counseling or treatment, other than from her general practitioner. (Tr. 19). This is confirmed by the record, which reflects that claimant has not sought mental health treatment since 1998. (Tr. 276-84). The ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993).

Further, claimant asserts that the consultative examiner, Dr. Guidry, noted that she appeared to "mentate slowly." (rec. doc. 8, p. 4; Tr. 433). However, Dr. Guidry did not believe that claimant was mentally retarded, just "slightly slowed." (Tr. 433). Claimant has cited no evidence whatsoever to raise the requisite suspicion necessary to require the ALJ to order an additional consultative mental examination. Accordingly, this argument lacks merit.

Next, claimant argues that this case should be remanded for further development in light of her migraines, stress invoked "asthma attacks," and generalized anxiety. (rec. doc. 8, p. 5). When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

In this case, claimant has not cited any "new" evidence to support her contention that this case should be remanded. Additionally, Dr. Guidry noted that although claimant had alleged daily asthma attacks, she had never been intubated and had not had a severe attack for several years. (Tr. 431). Further, she found no limitations due to claimant's headaches. As claimant has not met the requirements for remand, this argument lacks merit.

Next, claimant asserts that the ALJ propounded a defective hypothetical to the vocational expert. (rec. doc. 8, pp. 6-8). Specifically, she asserts that the ALJ should have included the limitations resulting from her emotional disorder. (rec. doc. 8, p. 7). However, the record reflects that the ALJ included a limitation as to short, simple

instructions, which indicated that she did incorporate her mental impairment into the hypothetical. (Tr. 519). As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Finally, claimant asserts that the ALJ erred in finding that she could do a significant range of light work. (rec. doc. 8, pp. 8-12). While claimant testified that she has problems with sitting, standing, and lying down, she has cited no objective evidence to support this. (rec. doc. 8, p. 10; Tr. 512). In the consultative examination, Dr. Guidry opined that claimant was able to sit, stand, walk, lift, hear, speak and handle objects without difficulty. (Tr. 434). It is well established that subjective complaints of pain must be corroborated by objective medical evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (citing *Houston v. Sullivan,* 895 F.2d 1012, 1016 (5th Cir.1989)). As the ALJ's finding as to claimant's ability to do light work is supported by the evidence, it is entitled to considerable deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed January 2, 2007, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE